UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| WAYNE ALLEN MCCLAIN, | : |
| Plaintiff, | : |
| v. | : Civ. No. 22-4696 (KM) (ESK) |
| OSCAR AVILES, MICHAEL DANTICO, HUDSON COUNTY CORRECTIONAL FACILITY, | : **OPINION** |
| Defendants. | : |

**KEVIN MCNULTY, U.S.D.J.**

Pro se plaintiff Wayne Allen McClain, a pretrial detainee at the Hudson County Correctional Facility (the "HCCF"), seeks to commence a civil rights action pursuant to 42 U.S.C. § 1983 stemming from allegedly "cruel and unsanitary" conditions related to COVID-19 protocols at HCCF. McClain's complaint names the following defendants: (1) Oscar Aviles, acting director of the Hudson County Department of Corrections ("HCDOC"); (2) Michael Dantico, head of the medical department at HCDOC; and (3) the HCCF. DE 3. McClain seeks to proceed *in forma pauperis* ("IFP"), DE 3-2, and has filed two motions for appointment of pro bono counsel. DE 2 & 4. For the reasons stated below, I will grant IFP status, dismiss the complaint without prejudice, and deny without prejudice McClain's motions to appoint pro bono counsel.

**I.    IFP APPLICATION**

The Prison Litigation Reform Act of 1995, Pub. L. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (Apr. 26, 1996) (the "PLRA"), establishes certain financial requirements for prisoners attempting to bring a civil action IFP. Specifically, a prisoner seeking to proceed IFP

must submit an affidavit, including a statement of all assets, establishing that the prisoner is unable to pay the fee. 28 U.S.C. § 1915(a)(1). The prisoner also must submit a certified copy of his inmate trust fund account statement for the six-month period immediately preceding the filing of his complaint. 28 U.S.C. § 1915(a)(2). After reviewing McClain's IFP application, I find that he has established financial eligibility to proceed without prepayment of fees under 28 U.S.C. § 1915. DE 3-2. Accordingly, IFP status is appropriate.

## II.     COMPLAINT

### A. Background

The complaint contains the following allegations, which, for screening purposes, I accept as true.

On June 22, 2022, seven detainees from Cumberland County Jail were transferred into the same unit as McClain. DE 3 at 6. A few days later, on June 29, 2022, one of those detainees, "A.C.",[1] was removed from the unit because of a positive COVID test result, and the unit was quarantined.. *Id.* McClain immediately requested a COVID test; he was tested three days later. *Id.* The complaint does not state what the result of the test was. On July 5, 2022, A.C. returned to the unit while the unit was still quarantined. *Id.* A.C. had not been tested (or re-tested) while the unit was in quarantine. *Id.*

"Upon seeing [A.C.] back and learning that he wasn't tested, it created a disturbance amongst the pod." *Id.* McClain "immediately put in a grievance to the administration asking how this is possible for someone to be placed on our unit while we're on quarantine." *Id.* The response from HCCF was "Classification Determination" (the complaint does not further explain the response or attach a copy). *Id.* The unit was tested for COVID-19 shortly after this; however,

---

[1] Detainees referenced in the complaint (other than McClain) are referred to by their initials to protect their medical information from disclosure.

A.C. and some other detainees were not tested. *Id.* Detainee E.W. tested positive and was removed from the unit the following day, July 6, 2022. *Id.* Allegedly, E.W. had been in direct contact with A.C. and had been showing symptoms, but the medical department had told him that he would not be treated unless he contracted COVID-19. *Id.* at 6–7.

McClain alleges that A.C. was tested upon arriving at the facility and moved into general population before his results came back. *Id.* at 7. McClain contends that A.C. should have been quarantined because he "complained of having different symptoms and had to be removed from his prior unit" and "transferred to the infirmary." *Id.* at 7. A.C. was allegedly informed that he was dehydrated and was sent back to his unit. *Id.* at 7. A.C. was then moved onto McClain's unit the following day, "where his results from his initial test showed that he was positive after moving throughout two separate pods and the infirmary." *Id.* at 7.

McClain contends that "things seem to be unmanageable and getting out of hand . . . at Hudson County" and he inquires if "there a policy in place . . . dealing with the prevention and spread of this virus." *Id.* at 7.[2]

McClain asserts jurisdiction pursuant to 42 U.S.C. § 1983 and alleges defendants "failed to establish a COVID-19 policy," which "created cruel and unsanitary conditions in various ways" that "put his life and health at risk." DE-3 at 4. He seeks "damages deemed fit by the courts for cruel conditions, health issues, mental conditions that jeopardize [his] life as well as [his] health dealing with the spread of covid." DE-3 at 9.

---

[2] McClain also includes information in his complaint about his detention in Cumberland County Jail beginning on December 29, 2020. DE-3 at 8. He summarizes his time spent in quarantine, receiving and awaiting results for multiple COVID-19 tests, and being in a dorm where five detainees tested positive for COVID-19 and one had to be transported to the hospital. *Id.* It is unclear whether McClain includes this information to provide background information he believes is relevant to his claim or because he seeks to hold defendants in this case responsible for events at Cumberland County. If the latter, such claims would be dismissed, as there are no allegations the defendants here are connected to Cumberland County Jail.

McClain filed a letter containing additional factual allegations after submitting his complaint. The letter details E.W.'s return to McClain's unit; detainees who have left his unit; detainees who have joined his unit from other facilities allegedly without being quarantined; various periods of quarantine that his unit, other units, and some employees have endured; occasions when he and other members of his unit have been tested for COVID-19; his observation that the "facility was in full swing" and a large number of individuals were in the hallways on a morning that he was "called for a lawyer visit"; when his unit was "taken off quarantine" due to "revisions in protocol"; and the fact that he was not tested when he believes he should have been. DE 5 at 2–4. McClain also alleges that he "stagnated" during the intake phase and in his progress of a drug treatment program due to periods of quarantine. *Id.* at 2. McClain does not allege that he has contracted COVID-19.

### B. Screening Standard

The PLRA requires district courts to review complaints in civil actions filed by prisoners. *See* 28 U.S.C. § 1915A(a). District courts must dismiss any case that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b) & 1915(e)(2)(B).

"The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)). That standard is set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). To survive the court's screening for failure to state a claim, the complaint must allege "sufficient factual matter to show that the claim is facially plausible." *Fowler v. UPMC Shadyside*, 578 F.3d

203, 210 (3d Cir. 2009) (citation and internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). "[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Pro se pleadings, as always, will be liberally construed. *See Haines v. Kerner*, 404 U.S. 519 (1972). Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

### C. 42 U.S.C. § 1983 Conditions of Confinement Claim

As McClain is a pretrial detainee, I construe the allegations summarized above as a civil rights claim pursuant to 42 U.S.C. § 1983 for violations of the Due Process Clause of the Fourteenth Amendment. For the reasons stated below, McClain's claim is dismissed as against all defendants.

#### 1. Applicable Law

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

5

*Id.* Thus, to state a claim for relief under § 1983, a plaintiff must allege first, the violation of a right secured by the Constitution or laws of the United States, and second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (citations omitted); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

The Due Process Clause of the Fourteenth Amendment affords protections to pretrial detainees "at least as great as the Eighth Amendment protections available to a convicted prisoner," *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983); *see also Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003). Due process or Eighth Amendment standards may be violated when a pretrial detainee is subjected to punishment that is not reasonably related to a legitimate governmental objective. *See Hubbard v. Taylor*, 538 F.3d 229, 236 (3d Cir. 2008). The Eighth Amendment requires prison officials to provide humane conditions of confinement. *See Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 256 (3d Cir. 2010); *see also Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "For the conditions of confinement to rise to the level of an Eighth Amendment violation, they must deny the 'minimal civilized measure of life's necessities.'" *Betts*, 621 F.3d at 256 (quoting *Farmer*, 511 U.S. at 835). Thus, "prison officials violate an inmate's Eighth Amendment rights when they deprive her of a single identifiable human need such as food, warmth, or exercise." *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 226 (3d Cir. 2015); *see also Betts*, 621 F.3d at 256 (inmates must receive "adequate food, clothing, shelter, and medical care," and prison officials must "take reasonable measures to guarantee the safety of inmates"). A "failure to provide minimally civil conditions of confinement to pre-trial detainees violates their rights against punishment without

due process of law." *Roman v. DeMarco*, No. 18-8010, 2019 WL 452736, at *2 (D.N.J. Feb. 5, 2019) (citing *Reynolds v. Wagner*, 128 F.3d 166, 173–74 (3d Cir. 1997)).

"Unconstitutional punishment typically includes both objective and subjective components." *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). "[T]he objective component requires an inquiry into whether the deprivation was sufficiently serious and the subjective component asks whether the officials acted with a sufficiently culpable state of mind." *Id.* (cleaned up). To meet the objective component, the conditions must "cause inmates to endure such genuine privations and hardship over an extended period of time, that the adverse conditions become excessive in relation to the purposes assigned to them." *Hubbard*, 538 F.3d at 233 (cleaned up). To meet the subjective component, a detainee must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety. *See Wilson v. Seiter,* 501 U.S. 295, 298-99 (1991).

A supervisor may not be held vicariously liable for the actions of subordinates. *See, e.g., Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015). To adequately plead a plausible § 1983 claim against Aviles and Dantico, McClain must plead facts which, if proven, would show that Aviles and Dantico had personal involvement in the alleged wrongs. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988). McClain must plausibly allege, among other things, that Aviles and Dantico enacted a policy, practice, or custom that was the "moving force" behind an alleged constitutional violation.[3] *City of Canton v. Harris*, 489 U.S. 378, 389

---

[3] Under a second theory of supervisory liability, a supervisor may be held liable when "he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). Knowledge, for these purposes, means "contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents." *C.H. ex rel. Z.H. v. Oliva*, 226 F.3d 198, 202 (3d Cir. 2000). Here, McClain does not allege Aviles and Dantico had actual knowledge of the allegations in his complaint. Rather, McClain's allegations against these defendants are targeted at their alleged "failure to enact a COVID-19 policy" which created "cruel and unsanitary conditions." DE 3 at 4. Thus, I analyze McClain's claim against these defendants under the supervisory theory of liability targeting policy makers.

(1989); *see also Los Angeles Cnty. v. Humphries*, 562 U.S. 29, 35–36 (2010). The Third Circuit addressed COVID-19 in the prison setting in *Hope v. Warden York County Prison*, 972 F.3d 310 (3d Cir. 2020), explaining that when evaluating a detention facility's protocols, courts "must acknowledge that practical considerations of detention justify limitations on many privileges and rights," and "ordinarily defer" to the expertise of prison officials in responding to COVID-19 unless there is "substantial evidence in the record that the officials have exaggerated their response" to the situation. *Id.*

### 2. Analysis

As an initial matter, HCCF, as a correctional facility, is not a "person" acting under color of state law and, therefore, is not amenable to suit under § 1983. *Rolle v. Essex Cnty. Corr. Facility*, No. 21-15198, 2022 WL 1044968, at *3 (D.N.J. Apr. 7, 2022) (Essex County Correctional Facility is not a "person" subject to § 1983 liability); *Harris v. Hudson Cnty. Jail*, No. 14-6284, 2015 WL 1607703, at *5 (D.N.J. Apr. 8, 2015) (Hudson County Jail is not a person amenable to suit under § 1983). Accordingly, the claims against HCCF must be dismissed.

As to the remaining defendants, the essential allegations of McClain's claim are that he has been subjected to periods of quarantine and COVID-19 tests; detainees have joined his unit during periods of quarantine without first being tested or quarantined; there were occasions on which he believed he should have been tested for COVID-19, but was not tested as quickly as he would have liked; and quarantine has slowed his progress in his drug treatment program. These allegations, even if true, do not support a finding that the defendants acted with a culpable state of mind, nor do they rise to the level of "cruel and unusual punishment" necessary to state a claim for unconstitutional conditions of confinement.

First, to the extent McClain claims his constitutional rights were violated merely by having been exposed to the virus, or by being at an increased risk of exposure to the virus, the allegation is insufficient. Exposure alone does not establish a constitutional violation. *See Hope*, 972 F.3d at 329 (rejecting petitioners' arguments that exposure to COVID-19 was per se unconstitutional and that the Government must eliminate their risk of exposure to comply with constitutional mandates).

Aside from potential exposure, McClain also alleges that defendants have not tested or quarantined detainees when McClain believes testing or quarantine was warranted. Somewhat inconsistently, McClain seems to allege that he has been quarantined too much, and that he would have progressed at a faster pace in his drug treatment program but for the periods of quarantine he has endured. These allegations do not establish that prison officials consciously disregarded a serious risk to McClain's health or safety. McClain does not allege, for example, that he contracted the virus; that no testing or quarantining is occurring; or that he or other inmates were denied medical treatment after becoming seriously ill. To the contrary, his complaint establishes that HCCF is attempting to take measures—such as testing and quarantining—aimed at mitigating the threat of COVID-19. *See id.* at 330 (noting the "challenges inherent in the detention setting" and that "CDC guidance suggests placing detainees into cohorts where social distancing is not practical").

Even if these measures slowed McClain's progress in a drug treatment program, they are not excessive in relation to HCCF's legitimate interest in managing the spread of COVID-19. Further, imperfections in the testing and quarantining procedures—particularly in the challenging environment of a detention center—do not, without more, amount to unconstitutional conditions of confinement or punishment. *See Youngberg v. Romeo*, 457 U.S.

307, 325 (1982) (under the Due Process Clause, "whether respondent's constitutional rights have been violated "must be determined by balancing his liberty interests against the relevant state interests"); *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007) (quoting *Rapier v. Harris*, 172 F.3d 999, 1005 (7th Cir. 1999)) ("[A] particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose."); *Whitley v. Albers*, 475 U.S. 312, 319 (1986) ("It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock.").

For these reasons, McClain's claims are dismissed for failure to state a claim pursuant to § 1915(e)(2)(B)(ii). This is, however, an initial dismissal, and I cannot state that amendment would be futile. Consequently, this dismissal is without prejudice to the filing, within 60 days, of a proposed amended complaint. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002) (leave to amend claims dismissed on screening should generally be granted unless amendment would be inequitable or futile).

### III.    MOTION FOR APPOINTMENT OF PRO BONO COUNSEL

McClain's motion seeking appointed counsel must be denied because his claims are dismissed for failure to state a claim. *See Montgomery v. Pinchak*, 294 F.3d 492, 498 (3d Cir. 2002) (counsel only warranted where a complaint presents claims of at least arguable merit); *see also Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993) (civil litigants have no statutory right to appointed counsel).

## IV. CONCLUSION

For the reasons stated above, (1) McClain's request to proceed IFP is granted; (2) McClain's § 1983 complaint is dismissed without prejudice as to defendants Aviles and Dantico, and with prejudice as to defendant HCCF; and (3) McClain's motions to appoint pro bono counsel are denied without prejudice. McClain may file a proposed amended complaint within 60 days. An appropriate order follows.

DATED: September 27, 2022

/s/ Kevin McNulty
_____
KEVIN MCNULTY
United States District Judge